UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MBA ENGINEERING, INC., as Sponsor and Administrator of the MBA Engineering, Inc. Employees 401(k) Plan and the MBA Engineering, Inc. Cash Balance Plan,<br><br>        Plaintiff,<br><br>vs.<br><br>VANTAGE BENEFITS ADMINISTRATORS, INC., JEFFREY A. RICHIE, WENDY K. RICHIE, and DOES 1-10, Whose Names Are Currently Unknown,<br><br>        Defendants. | Case No: |

## COMPLAINT FOR BREACH OF ERISA FIDUCIARY DUTY, INJUNCTIVE RELIEF, CO-FIDUCIARY LIABILITY, WRIT OF ATTACHMENT, AND COMMON LAW FRAUD, PROFESSIONAL NEGLIGENCE, NEGLIGENT MISREPRESENTATION, NEGLIGENCE, TEXAS THEFT LIABILITY ACT AND BREACH OF CONTRACT

Plaintiff MBA Engineering, Inc. ("Plaintiff"), as sponsor and administrator of the MBA Engineering, Inc. Employees 401(k) Plan (a.k.a. the MBA Engineering, Inc. Retirement Plan) and the MBA Engineering, Inc. Cash Balance Plan (collectively, the "Plans"), for its Complaint against Defendants Vantage Benefits Administrators, Inc. ("Vantage Benefits"), Jeffrey A. Richie, Wendy K. Richie, and DOES 1 through 10, whose names are currently unknown (collectively, "Defendants"), declares and states as follows:

### NATURE OF ACTION

1.      Defendants stole approximately $2,269,653.43 in retirement benefits from the participants of the MBA Engineering Plans. Defendants disguised their fraud for nearly a year by falsifying Plan participant account statements and participant accessible website information

to make it appear that participant account balances were whole and accurate.  All the while, Defendants systematically transferred millions of dollars in retirement benefits from the Plans to their own bank account, and for their own gain.

2.       At all relevant times, Defendants were fiduciaries with respect to the Plans, and therefore, owed the highest duties known in the law to the Plans and the Plans' participants.  But instead of acting in the exclusive interests of the Plans and the Plans' participants, Defendants surreptitiously carried out a series of self-dealing, fraudulent acts designed to line their own pockets with the hard earned retirement assets of MBA Engineering employees.  In doing so, Defendants breached their fiduciary duties of loyalty and prudence with respect to the Plan and the Plans' participants under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and engaged in transactions that ERISA strictly prohibits.

3.       In carrying out their fraudulent scheme, Defendants misrepresented the value of participant account balances in the Plans by falsifying account statements and information on the Vantage Benefits participant website in order to maintain the appearance that the participant accounts contained the appropriate funds.  These material misrepresentations were made with the intent to defraud the Plans' participants and Plaintiff and to hide Defendants' fraudulent conduct.  Plaintiff and the Plans' participants relied on Defendants' misstatements to their extreme detriment: during a twelve-month period between June 2016 and June 2017, Defendants siphoned millions of dollars from the assets of the Plans.  Prior to Defendants' theft, the Plans' total value was approximately $2.5 million; after this twelve-month period, Defendants had stolen roughly $2,269,653.43: nearly all of the Plans' assets.  This injury was catastrophic to the Plans.

4.       Defendants must repay the assets they stole from the Plans, with lost earnings or interest.   And in light of the depravity of Defendants' fraudulent scheme, Plaintiff seeks

170236.v11

exemplary damages based on Defendants' outright fraud. Plaintiff also seeks an injunction to stop Defendants from further illegally transferring the Plans' assets, and barring Defendants from performing services to any employee benefit plans in the future. And Plaintiff seeks a writ of attachment of any property or Plan assets in Defendants possession or control, in an amount necessary to secure Defendants' debt to Plaintiff. Plaintiff seeks this attachment *immediately* to prevent further damage to the Plans.

## THE PARTIES

5.      Plaintiff MBA Engineering, Inc. is a corporation organized and existing under the laws of Minnesota, with its principal place of business in Blaine, Minnesota. Plaintiff is the Plans' Sponsor under ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(A), the Plan's Administrator under ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and a fiduciary of the Plans under ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102. As a fiduciary with respect to the Plans, Plaintiff may bring this action against Defendants pursuant to ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3).

6.      Defendant Vantage Benefits Administrators, Inc. is a corporation organized and existing under the laws of California, with its principal place of business at 1201 Elm Street, Suite 1600, Dallas, Texas 75270. At all relevant times, Vantage Benefits was the Plans' third-party administrator and recordkeeper. Vantage Benefits was a *de facto* fiduciary with respect to the Plans pursuant to ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102, because it exercised discretionary authority and control respecting management or disposition of the Plans' assets. *See Chao v. Day*, 436 F.3d 234, 235 (D.C. Cir. 2006) (finding a third-party service provider who misappropriated the assets of an ERISA plan was a fiduciary under ERISA because he exercised "authority or control over the disposition of the plans assets," and that in "order to qualify as a fiduciary with respect to a plan's assets, a person must simply exercise any authority

3

or control over their management or disposition.") (internal quotations marks omitted); *Bannistor v. Ullman,* 287 F.3d 394, 401 (5th Cir. 2002) (finding that the "term 'fiduciary' is liberally construed in keeping with the remedial purpose of ERISA," and a "'fiduciary' should be defined not only by reference to particular titles, . . . but also by considering the authority which a particular person has or exercises over an employee benefit plan.").   At all relevant times, Vantage Benefits was also a "party in interest" to the Plans pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), because it provided  services to the Plans.

7.     Pursuant to its contractual agreements with Plaintiff, Vantage Benefits also acted as a third-party administrator and recordkeeper for the Plans in a non-fiduciary capacity.  In its Services Agreement with Plaintiff, Vantage Benefits warranted "that all Services shall be performed in a good and workmanlike manner, in compliance with all applicable Laws, rules and regulations, and consistent with current industry standards applicable to service providers in the Benefits Administration industry."

8.     Defendant Jeffrey A. Richie is an individual residing at 2414 S. Westmoreland Rd., Red Oak, Texas 75154, and is the Owner, President, and Chief Executive Officer of Vantage Benefits.  Jeffrey A. Richie was a *de facto* fiduciary with respect to the Plans pursuant to ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102, because he exercised discretionary authority and control respecting management or disposition of the Plans' assets.  *See Day*, 436 F.3d at 235 (finding a third-party service provider who misappropriated the assets of an ERISA plan was a fiduciary under ERISA because he exercised "authority or control over the disposition of the plans assets," and that in "order to qualify as a fiduciary with respect to a plan's assets, a person must simply exercise any authority or control over their management or disposition.") (internal quotations marks omitted); *Bannistor,* 287 F.3d at 401 (finding that the "term 'fiduciary' is liberally construed in keeping with the remedial purpose of ERISA," and a

"'fiduciary' should be defined not only by reference to particular titles, . . . but also by considering the authority which a particular person has or exercises over an employee benefit plan."). At all relevant times, Jeffrey A. Richie was also a "party in interest" to the Plans pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), because he provided services to the Plans.

9.      Defendant Wendy K. Richie is an individual residing at 2414 S. Westmoreland Rd., Red Oak, Texas 75154, and is the Owner, Secretary, and Chief Financial Officer of Vantage Benefits. Wendy K. Richie was a *de facto* fiduciary with respect to the Plans pursuant to ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102, because she exercised discretionary authority and control respecting management or disposition of the Plans' assets. *See Day*, 436 F.3d at 235 (finding a third-party service provider who misappropriated the assets of an ERISA plan was a fiduciary under ERISA because he exercised "authority or control over the disposition of the plans assets," and that in "order to qualify as a fiduciary with respect to a plan's assets, a person must simply exercise any authority or control over their management or disposition.") (internal quotations marks omitted); *Bannistor,* 287 F.3d at 401 (finding that the "term 'fiduciary' is liberally construed in keeping with the remedial purpose of ERISA," and a "'fiduciary' should be defined not only by reference to particular titles, . . . but also by considering the authority which a particular person has or exercises over an employee benefit plan."). At all relevant times, Wendy K. Richie was also a "party in interest" to the Plans pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), because she provided services to the Plans.

10.      Defendants, DOES 1 through 10, are fiduciaries to the Plans and/or individuals or entities that (i) were complicit in Defendants' fraudulent scheme, or (ii) failed to stop Defendants' fraudulent scheme despite knowing or having reason to know that Defendants were engaging in this fraudulent conduct. Plaintiff is currently unable to determine the identities of

DOES 1 through 10 despite reasonable and diligent efforts.   DOES 1 through 10 are placeholders, and Plaintiff will move, pursuant to Rule 15 of the Federal Rules of Civil Procedure, to amend this Complaint to name DOES 1 through 10 as defendants in this lawsuit once their identities are discovered.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because the action arises under 29 U.S.C. § 1001, *et seq*.

12.     This Court has supplemental jurisdiction over Plaintiff's claims for Common Law Fraud, Professional Negligence, Negligent Misrepresentation, Negligence, Texas Theft Liability Act, Breach of Contract, and Writ of Attachment because it has original jurisdiction under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and Plaintiff's claims for Common Law Fraud, Professional Negligence, Negligent Misrepresentation, Negligence, Texas Theft Liability Act, Breach of Contract, and Writ of Attachment are so related to its ERISA claims, which fall within such original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution (28 U.S.C. § 1367).

13.     Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. §1132(e)(2), because this is the District where Defendants' breach took place and where Defendants reside or may be found.

## FACTUAL ALLEGATIONS

### A.      Background.

14.     The MBA Engineering, Inc. Employee 401(k) Plan (a.k.a. the MBA Engineering, Inc. Retirement Plan) (the "MBA 401(k) Plan") became effective on January 1, 1998, and was amended and restated on January 1, 2016.  The MBA Engineering, Inc. Cash Balance Plan (the "MBA Cash Balance Plan") became effective on January 1, 2015.  The Plans were created for

the benefit of the employees of MBA Engineering, Inc., and are employee pension benefit plans within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

15.   The MBA 401(k) Plan is funded through elective deferrals of the MBA 401(k) Plan's participants, 401(k) "ADP test safe harbor contributions," matching and discretionary profit sharing contributions by Plaintiff, and rollover contributions.

16.   At all relevant times, MG Trust Company, LLC (a wholly-owned subsidiary of Matrix Financial Solutions, Inc., which operates as a subsidiary of Broadridge Financial Solutions, Inc.) ("MG Trust Company") served as a trustee to the Plans.  In a November 25, 2014 "Letter of Acceptance" sent from MG Trust Company to Fidelity Investments, which then served as the MBA 401(k) Plan's trustee, MG Trust Company acknowledged that it was the "Successor Trustee for MBA Engineering Inc. Employees 401k Plan."  MG Trust Company further stated that it had "been appointed to serve as successor trustee for the ***MBA Engineering Inc. Employees 401k Plan*** effective ***January 30, 2015. MG Trust Company LLC*** will accept responsibility for the assets for the plan as of ***January 30, 2015***."  Should MG Trust Company take the position that it is a custodian of the MBA 401(k) Plan's assets and not a trustee, the MBA 401(k) Plan document states that a "Custodian has the same powers, rights and duties as a nondiscretionary Trustee. Any reference in the Plan to a Trustee also is a reference to a Custodian unless the context of the Plan indicates otherwise."  Plan Document, Article VII(4).

17.   As successor trustee for the Plans, MG Trust Company is a fiduciary with respect to the Plans pursuant to ERISA §§ 3(21)(A), 402(a)(1), 403(a), 29 U.S.C. §§ 1002(21)(A), 1102(a)(1), 1103(a), because it has authority and control over the Plans' assets.  Even though it received instruction from Defendants with respect to the fraudulent wire transfers at issue in this Complaint, as the Plans' trustee, MG Trust Company "will, by definition, always be a fiduciary under ERISA as result of its authority or control over plan assets."  Employee Benefits Security

Administration, United States Department of Labor, Field Assistance Bull. No. 2004-03, Fiduciary Responsibilities of Directed Trustees (2004).

18.     In 2008, Defendant Jeffrey Richie was "sanctioned by the federal Securities and Exchange Commission and barred from the investment business for three years 'for conducting an unregistered and fraudulent offering' of securities in the retirement-services company he was running at the time."  Terri Langford, *FBI raids Dallas financial office amid allegations of missing retirement funds*, Dallas News (Oct. 31, 2017), https://www.dallasnews.com /news/downtown-dallas/2017/10/31/fbi-raids-dallas-office-401k-manager-vantage-benefits; FINRA Broker Check JEFFREY ALAN RICHIE CRD#: 1870849 https://brokercheck.finra.org/ individual/summary/ 1870849.

**B.     Defendants' Fraudulent Scheme.**

19.     At some time prior to October 25, 2017, an actuary employed by Vantage Benefits named Charles Leggette detected abnormalities with certain accounts for which Vantage Benefits provided recordkeeping services, including the Plans.

20.     Upon discovery of these abnormalities, Mr. Leggette filed a Form 211 with the Internal Revenue Service ("IRS") under the IRS's whistleblower program.   The IRS acknowledged receipt of Mr. Leggette's Form 211 by letter dated August 23, 2017.  Around this time, another Vantage Benefits employee filed a similar claim with the United States Department of Labor ("DOL").

21.     Investigation into Vantage Benefits' bookkeeping revealed that, over the course of a twelve-month period between June 2016 and June 2017, Defendants had systematically misrepresented the balances of accounts in the Plans to Plaintiff and the Plans' participants to hide the fact that Defendants were causing millions of dollars of the Plans' assets to be transferred to their own business account, for their own gain.

170236.v11

22.     Defendants fabricated account statements and information on the Vantage Benefits website to hide the fact that Defendants were fraudulently transferring millions of dollars in retirement assets from the Plans to a Vantage Benefits business account held at Bank of America.  Plaintiff and the Plans' participants relied on these material misrepresentations to their extreme detriment.

23.     Through a TPA customer portal maintained by MG Trust Company, Defendants electronically instructed MG Trust Company, as the Plans' trustee, to complete wire transfers of assets from the accounts of the Plans' participants purportedly to an entity called Hilltop Securities, Inc. ("Hilltop Securities").   The bank routing and bank account numbers that Defendants provided for these transfers, however, corresponded to a Vantage Benefits business account that was held at Bank of America.  There is no evidence that Hilltop Securities received any assets of the Plans through these wire transfers.

24.     All of the fraudulent wire transfers of assets from the Plans were sent using the same Bank of America routing and account numbers.  Other fraudulent transfers of assets from the Plans to the same Bank of America account may have been done by ACH transfers.

25.     Between June 3, 2016 and June 7, 2017, Defendants improperly instructed MG Trust Company to make approximately thirty-five (35) fraudulent wire transfers from participant accounts in the Plans to a Vantage Benefits account held at Bank of America, under the guise that these transfers were for the benefit of the Plans' participants.  MG Trust Company's certified trust statements show that thirty-four (34) of these fraudulent transfers were made from the MBA 401(k) Plan, totaling approximately $2,174,903.43, and one of these fraudulent transfers was made from the MBA Cash Balance Plan, totaling approximately $94,750.00.

26.     The fraudulent distributions were labeled and structured by the Defendants in their instructions to MG Trust Company so that there was no reporting of the distributions to the

IRS in order that Defendants could conceal and hide their thefts from Plaintiff and the federal authorities.  MG Trust Company knew that Vantage Benefits was instructing that these wire transfers be made on a non-reportable basis, and that if these wire transfers were valid participant distributions, these distributions were required to be reported to the IRS, such as by the filing of Forms 1099.

27.     In response to Defendants' improper instructions, MG Trust Company completed wire transfers to Defendants of retirement plan assets from participant accounts in the Plans, even though MG Trust Company knew or should have known that the transfers were unauthorized and illegal because the wire transfers were being made to one Bank of America account in the name of Vantage Benefits and not to Hilltop Securities, the purported transferee in the instructions received by MG Trust Company from the Defendants.

28.     Pursuant to its own trust statements, MG Trust Company was aware that MBA 401(k) Plan participants could only direct their retirement assets into one money market fund or a series of mutual funds that were offered as investment options by the Plan.  Accordingly, MG Trust Company was aware that transferring assets to a self-directed brokerage account, as may be offered by an entity like Hilltop Securities, was not an option under the MBA 401(k) Plan, but it completed these wire transfers anyway, without inquiring as to their validity.

29.     Many of the wire transfers were made from participant accounts in the Plans in amounts that greatly exceeded the actual value of the accounts from which the transfers were made.

30.     Defendants completed twenty-five (25) of the total thirty-five (35) fraudulent wire transfers using fake names and Social Security numbers.  With respect to these fake names and Social Security numbers, MG Trust Company knew or had reason to know that the individuals associated with these wire transfers were not participants in the Plans.

170236.v11

31.     MG Trust Company completed these wire transfers despite the frequency of the transfers.  For instance, roughly thirty-four (34) large wire transfers were made from the MBA 401(k) Plan over the course of a twelve-month period, from a Plan that had only forty (40) active participants at the end of the 2015 Plan year, as shown by the publicly available Form 5500 for the MBA 401(k) Plan.

32.     MG Trust Company knew that each of these transfers was made using the same bank routing number and same bank account number, which was connected to a Vantage Benefits business account held at Bank of America.

33.     MG Trust Company completed these transfers when it knew or had reason to know that the distributions were nearly draining the entire balance of the Plans' assets held by MG Trust Company as the trustee of the Plans.  Without these fraudulent transfers, the MBA 401(k) Plan would have a total value today of approximately $2,469,000.00.  So Defendants depleted nearly 88% of the MBA 401(k) Plan's total value between June 2, 2016 and June 3, 2017.  Likewise, Defendants instructed that $94,000 be transferred from the MBA Cash Balance Plan, even though the total balance of that Plan was only $210,504.86 by the end of 2016.  This transfer amounted to a 45% decrease in the total value of the MBA Cash Balance Plan.

34.     The MBA 401(k) Plan, from which thirty-four (34) of the thirty-five (35) fraudulent transfers were made, only allows participants to receive distribution of their vested benefits upon: (i) termination of employment for reasons other than death, disability or retirement; (ii) normal retirement; (iii) disability; and (iv) death.  Summary Plan Description, Article VII.  Likewise, the MBA Cash Balance Plan only allows for distribution of benefits upon the death or retirement of a participant.  Summary Plan Description, Article III.  Nevertheless, MG Trust Company facilitated fraudulent transfers from participant accounts that were categorized as "distributions" over the course of one year, even some of though these

11

participants continued to make contributions into the Plans.

35.     In total, Defendants stole approximately $2,269,653.43 from the Plans between June 3, 2016 and June 7, 2017.   Prior to Defendants' fraudulent transfers, the Plans' total combined balance was approximately $2.5 million, so Defendants' scheme was simply catastrophic to the Plans and the participants' retirement savings.

36.     Where a "directed trustee knows or should know that a direction from a named fiduciary is not made in accordance with the terms of the plan or is contrary to ERISA, the directed trustee may not, consistent with its fiduciary responsibilities, follow the direction." Employee Benefits Security Administration, United States Department of Labor, Field Assistance Bull. No. 2004-03, Fiduciary Responsibilities of Directed Trustees (2004).  MG Trust Company transferred $2,269,653.43 in Plan assets from participant accounts in response to Defendants' instructions over the course of this twelve-month period, even though MG Trust Company had reason to know that Defendants' wire transfers instructions violated the terms of the Plans and ERISA, and were therefore improper.

37.     On October 25, 2017, the Federal Bureau of Investigation ("FBI") executed a search warrant at Vantage Benefits' offices in Dallas, Texas. Terri Langford, *FBI raids Dallas financial office amid allegations of missing retirement funds*, Dallas Morning News (October 31, 2017), https://www.dallasnews.com/news/downtown-dallas/2017/10/31/fbi-raids-dallas-office-401k manager-vantage-benefits.

38.     Upon information and belief, Plaintiff alleges that the United States Department of Labor ("DOL") and Department of Justice ("DOJ") have shut down Vantage Benefits and seized all of its accounts, including the Bank of America account into which the fraudulent wire transfers were made.

39.     Defendants did not limit their fraudulent scheme to Plaintiff and the Plans.

12

Plaintiff is aware that Defendants stole nearly $8 million from a 401(k) Plan sponsored by Oklahoma corporations named Caldwell and Partners, Inc., Midlands Claim Administrators, Inc., and Midlands Management Corporation, and a Texas corporation named Midlands Management of Texas, Inc. (collectively, "CPI").  *See Dallas County District Court Case No. DC-17-15265, Docket No. 2.*  CPI filed a petition on November 6, 2017 against Vantage Benefits and Jeffrey Richie that asserted claims under the Texas Civil Remedies and Practice Code § 134.003, Uniform Fraudulent Transfers Act, and for Negligent Misrepresentation.  *Id.*  CPI's petition seeks monetary and exemplary damages.  *Id.*

40.    CPI's petition also requested a temporary restraining order and temporary injunction to enjoin Vantage Benefits and Jeffrey Richie from "transferring any assets held in account controlled, directly or indirectly, by Vantage [Benefits], Richie." *Id.*  And CPI requested an attachment under Chapter 61 of the Texas Civil Practice and Remedies Code and the Texas Uniform Fraudulent Transfers Act for "all amounts of assets and/or cash shown at hearing to be reasonably tailored to protect the Plan during the pendency" of its lawsuit.  *Id.*

41.    On November 29, 2017, the Dallas County District Court granted CPIs application for a temporary injunction, and found that "the evidence demonstrates a probable right to recovery for unlawful transfers of assets of the [CPI] 401(k) Plan." *Id.* at Docket No. 42. The Court found that this order was "necessary to preserve the status quo and prevent further transfer of assets or funds" because "further transfers would comprise an irreparable injury." *Id.*

42.    Plaintiff is also aware that Defendants' fraudulently transferred assets from a number of other plans as well, in amounts yet to be determined.

**FIRST CLAIM FOR RELIEF**
(Against All Defendants, and DOES 1 through 10, Inclusive, for Damages for Breach of
Fiduciary Duty of Loyalty, ERISA §502(a)(2), 29 U.S.C. §1102(a)(2))

43.    Plaintiff incorporates the allegations in the previous paragraphs of this Complaint

as if fully set forth herein.

44.     ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(a), provides that a fiduciary shall discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of (i) providing benefits to participants and their beneficiaries and (ii) defraying reasonable expenses of administering the plan.

45.     At all relevant times, Defendants were fiduciaries with respect to the Plans pursuant to ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102, because they exercised discretionary authority and control respecting management or disposition of the Plans' assets. *See Day*, 436 F.3d at 235); *Bannistor,* 287 F.3d at 401.

46.     Defendants exercised authority and control over the Plans' assets by improperly instructing MG Trust Company to make wire transfers of assets from the Plans to Defendants' business account held at Bank of America.  This exercise of authority and control over the Plans' assets, and Defendants' misappropriation of the Plans' funds, requires that Defendants be considered fiduciaries under ERISA.

47.     Between June 3, 2016 and June 7, 2017, Defendants stole roughly $2,269,653.43 from the Plans for their own personal gain.  Defendants improperly instructed MG Trust Company to transfer funds from participant accounts under the false pretense that the transfers were being made to Hilltop Securities and were non-tax reportable distributions from the Plans. Defendants disguised their theft by creating falsified account statements and website information about the balance of  the participants' accounts, with the intent to defraud Plaintiff and the Plans' participants.  Plaintiff and the Plans' participants relied on these misrepresentations to their great detriment because, while it appeared that their accounts contained the proper amount of funds, Defendants directed disbursements of millions of dollars from the Plans to their own business account at Bank of America.

48.     In creating, orchestrating, facilitating, and/or participating in this fraudulent scheme, and with each act of fraud, Defendants violated the terms of the Plans and their fiduciary duty of loyalty to act solely in the interest of the Plans' participants.  By virtue of these breaches of the fiduciary duty of loyalty, the Plans were damaged in an amount to be shown according to proof, but in the amount of at least $2,269,653.43, plus lost earnings or interest thereon.

## SECOND CLAIM FOR RELIEF
(Against All Defendants, and DOES 1 through 10, Inclusive, for Damages for Breach of Fiduciary Duty of Prudence, ERISA §502(a)(2), 29 U.S.C. §1102(a)(2))

49.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

50.     ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), provides that a fiduciary shall discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

51.     At all relevant times, Defendants were fiduciaries with respect to the Plans pursuant to ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102, because they exercised discretionary authority and control respecting management or disposition of the Plans' assets. *See Day*, 436 F.3d at 235); *Bannistor,* 287 F.3d at 401.

52.     Defendants exercised authority and control over the Plans' assets by improperly instructing MG Trust Company to make wire transfers from the assets of the Plan to Defendants' business account held at Bank of America.  This exercise of authority and control over the Plans' assets, and Defendants' misappropriation of the Plans' funds, requires that Defendants be considered fiduciaries under ERISA.

53.     Between June 3, 2016 and June 7, 2017, Defendants stole roughly $2,269,653.43

170236.v11

from the Plans for their own personal gain.   Defendants improperly instructed MG Trust Company to transfer funds from participant accounts under the false pretense that the transfers were being made to Hilltop Securities and were non-tax reportable distributions from the Plans. Defendants disguised their theft by creating falsified account statements and website information about the balance of the participants' accounts, with the intent to defraud Plaintiff and the Plans' participants.   Plaintiff and the Plans' participants relied on these misrepresentations to their great detriment because, while it appeared that their accounts contained the proper amount of funds, Defendants directed disbursements of millions of dollars from the Plans to their own business account at Bank of America.

54.     In creating, orchestrating, facilitating, and/or participating in this fraudulent scheme, and with each act of fraud, Defendants violated the terms of the Plans and their fiduciary duty of prudence to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

55.     By virtue of these breaches of the fiduciary duty of prudence, the Plans were damaged in an amount to be shown according to proof, but in the amount of at least $2,269,653.43, plus lost earnings or interest thereon.

### THIRD CLAIM FOR RELIEF
(Against All Defendants, and DOES 1 through 10, Inclusive, for violation of ERISA's Prohibited Transaction Provisions, ERISA § 406(b)(1) and (3), 29 U.S.C. § 1106(b)(1) and (3))

56.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

57.     ERISA § 406(b), 29 U.S.C. § 1106(b), provides, in relevant part, that "[a] fiduciary with respect to a plan shall not –

(1)     deal with the assets of the plan in his own interest or for his own account, . . . or

170236.v11

* * *

(3)     receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

58.     Defendants exercised authority and control over the Plans' assets by improperly instructing MG Trust Company to make wire transfers of assets from the Plans to Defendants' business account held at Bank of America.  This exercise of authority and control over the Plans' assets, and Defendants' misappropriation of the Plans' funds, requires that Defendants be considered fiduciaries under ERISA.

59.     Between June 3, 2016 and June 7, 2017, Defendants stole roughly $2,269,653.43 from the Plans for their own personal gain.  Defendants improperly instructed MG Trust Company to transfer funds from participant accounts under the false pretense that the transfers were being made to Hilltop Securities and were non-tax reportable distributions from the Plans. Defendants disguised their theft by creating falsified account statements and website information about the balance of  the participants' accounts, with the intent to defraud Plaintiff and the Plans' participants.  Plaintiff and the Plans' participants relied on these misrepresentations to their great detriment because, while it appeared that their accounts contained the proper amount of funds, Defendants directed disbursements of millions of dollars from the Plans to their own business account at Bank of America.

60.     In creating, orchestrating, facilitating, and/or participating in the fraudulent transfer of the Plans' assets, Defendants dealt with the Plans' assets for their own interest. Defendants directed the wiring of these funds to their own Vantage Benefits bank account held at Bank of America.  In so doing, Defendants engaged in a transaction prohibited by ERISA § 406(b), 29 U.S.C. § 1106(b) on each occasion that Defendants fraudulently transferred funds from the Plans' participants' accounts to their own Bank of America account.

61.     Moreover, as parties in interest to the Plan, the Defendants engaged in

17

transactions prohibited by ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), on each occasion on which they fraudulently obtained the Plans' assets through the transfer of the Plans' assets to their own accounts in that they transferred assets of the Plans to, for the use by or for the benefit of, a party in interest.

62.     By virtue of engaging in these prohibited transactions, Defendants violated the terms of the Plans, and breached their fiduciary duties held to Plaintiff and the Plans' participants, and damaged the Plans in an amount to be shown according to proof, but in the amount of at least $2,269,653.43, plus lost earnings or interest thereon.

**FOURTH CLAIM FOR RELIEF**
(Against All Defendants, and DOES 1 through 10, Inclusive, for Surcharge, ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3))

63.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

64.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a fiduciary may bring a civil action to "(A) … enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

65.     During the time of the divided bench, courts sitting in equity "possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.'" *CIGNA Corp. v. Amara*, 563 U.S. 421, 441–42 (2011).

66.     This "surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Id.*  The surcharge remedy "fall[s] within the scope of the term 'appropriate equitable relief' in § 502(a)(3)." *Id.*

67.     Defendants exercised authority and control over the Plans' assets by improperly

instructing MG Trust Company to make wire transfers from the Plans to Defendants' business account held at Bank of America.  This exercise of authority and control over the Plans' assets, and Defendants' misappropriation of the Plans' funds, requires that Defendants be considered fiduciaries under ERISA.

68.     Between June 3, 2016 and June 7, 2017, Defendants stole roughly $2,269,653.43 from the Plans for their own personal gain.   Defendants improperly instructed MG Trust Company to transfer funds from participant accounts under the false pretense that the transfers were being made to Hilltop Securities and were non-tax reportable distributions from the Plan. Return of the $2,269,653.43 is required to prevent Defendants' unjust enrichment.

69.     Plaintiff and the Plans' participants must be compensated for the loss resulting from Defendants breaches of fiduciary duty in an amount to be shown according to proof, but in the amount of at least $2,269,653.43, plus lost earnings or interest thereon.

## FIFTH CLAIM FOR RELIEF
(Against All Defendants, and DOES 1 through 10, Inclusive, for Injunctive Relief,
ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3))

70.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

71.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a participant, beneficiary or fiduciary may bring a civil action to "(A) … enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

72.     Under ERISA equitable relief includes "those categories of relief which were typically available in equity (such as injunction, mandamus, and restitution …)." *Brown v.*

*Nationsbank of Georgia, NA*, 161 F.3d 8 (5th Cir. 1998) (citing *Mertens v. Hewitt Associates,* 508 U.S. 248, 256 (1993)).

73.      Defendants exercised authority and control over the Plans' assets by improperly instructing MG Trust Company to make wire transfers from the Plans to Defendants' business account held at Bank of America.  This exercise of authority and control over the Plans' assets, and Defendants' misappropriation of the Plans' funds, requires that Defendants be considered fiduciaries under ERISA.

74.      Through a system of fraud and deceit, Defendants stole millions of dollars from the Plans' participants.  Defendants orchestrated, facilitated, or participated in the transfer of these funds from the Plans to a Bank of America account held by Vantage Benefits for their own gain.  In so doing, Defendants violated the terms of the Plans and breached their fiduciary duties, as described in detail above.

75.      Plaintiff requests an injunction: (i) enjoining Defendants from further transferring, disposing of, or otherwise dealing in any of the Plans' assets, (ii) ordering Defendants, and each of them, to return any assets that were fraudulently transferred from the Plans back to the Plans; and (iii) permanently barring Defendants, and each of them, from acting as a fiduciary for or providing any services for any employee benefit plan governed by ERISA.

### SIXTH CLAIM FOR RELIEF
(Against All Defendants, and DOES 1 through 10, Inclusive, for Co-Fiduciary Liability)

76.      Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

77.      ERISA § 405(a), 29 U.S.C. §1105(a), provides that, "[i]n addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2)     if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

78.     Defendants exercised authority and control over the Plans' assets by improperly instructing MG Trust Company to make wire transfers of assets from the Plans to Defendants' business account held at Bank of America.

79.     Between June 3, 2016 and June 7, 2017, Defendants stole roughly $2,269,653.43 from the Plans for their own personal gain.   Defendants improperly instructed MG Trust Company to transfer Plan assets from participant accounts under the false pretense that the transfers were being made to Hilltop Securities and were non-tax reportable distributions from the Plans.   Defendants, and each of them, disguised their theft by creating falsified account statements and website information about the balance of the participants' accounts, with the intent to defraud Plaintiff and the Plans' participants.   Plaintiff and the Plans' participants relied on these misrepresentations to their great detriment because, while it appeared that their accounts contained the proper amount of funds, Defendants directed disbursements of millions of dollars from the Plans to their own business account at Bank of America.   As a result of these activities, Defendants breached their fiduciary duties of prudence and loyalty, and engaging in prohibited transactions.

80.     Each of the Defendants and fiduciaries of the Plans knowingly participated in, enabled, and failed to make reasonable efforts to remedy the other Defendants' breaches of fiduciary duty despite knowledge of their breaches. For instance, each of the Defendants knew that approximately $2,174,903.43 was transferred from the MBA 401(k) Plan over the course of

21

one year, resulting in a nearly 88% reduction in the MBA 401(k) Plan's value.  Defendants

instructed that these wire transfers be styled as "distributions" to be made on a non-reportable

basis, but each of the Defendants knew that if these wire transfers were valid participant

distributions, these distributions were required to be reported to the IRS. And each of the

Defendants knew or should have known that the Plans only allowed distributions to participants

in the event of termination, retirement, disability, or death, but that the participants continued to

make contributions into the Plans.

81.     Each of the Defendants, therefore, knew that the other Defendants were failing to

discharge their fiduciary obligations in accordance with the Plans' terms and ERISA.

82.     To the extent that any Defendants are not deemed to be fiduciaries, or are not

deemed to be acting as fiduciaries for any and all applicable purposes, any such Defendants are

liable for these breaches of fiduciary duty, since such Defendants knowingly participated in the

fiduciary breaches.

83.     By virtue of these breaches of fiduciary duty, the Plans were damaged in an

amount to be shown according to proof, but in the amount of at least $2,269,653.43, plus lost

earnings or interest thereon.

**SEVENTH CLAIM FOR RELIEF**
(Against All Defendants, and DOES 1 through 10, Inclusive, for Writ of Attachment, Section
61.001 of the Texas Civil Practice and Remedies Code and the Texas Uniform Fraudulent
Transfers Act ("UFTA"))

84.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint

as if fully set forth herein.

85.     Plaintiff seeks a writ of attachment based on the extreme circumstances involving

Defendants' fraudulent conduct, and the indeterminate status of the solvency of Jeffrey A.

Richie, Wendy K. Richie, and Vantage Benefits.  A writ of attachment is required to prevent

further loss to the Plans and ensure recovery of the participants' retirement benefits.

170236.v11

86.     "Federal Rule of Civil Procedure 64, which is applicable here pursuant to Federal Rule of Bankruptcy Procedure 7064, [] provides that in a civil action 'every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of [a] potential judgment.'"   *In re Atlas Fin. Mortg., Inc*., No. 13-32683-BJH-7, 2014 WL 172283, at *1 (Bankr. N.D. Tex. Jan. 14, 2014) (citing FED. R. CIV. P. 64(a)).  Plaintiff seeks a writ of attachment under Section 61.001 of the Texas Civil Practice and Remedies Code, and Sections 24.005 and 24.008(a)(2) of the Texas Business & Commercial Code.

87.     Under Texas law, "it is possible for a plaintiff to obtain a writ of attachment against a defendant's property to secure the plaintiff's debt before a court issues a judgment."   *In re Atlas Fin. Mortg., Inc*., 2014 WL 172283, at *1 (citing *E.E. Maxwell Co., Inc. v. Arti Decor, Ltd*., 638 F. Supp. 749, 753 (N.D. Tex 1986)).

88.     Under Section 61.001 of the Texas Civil Practice and Remedies Code, a writ of original attachment is available to a plaintiff in a suit if: "(1) the defendant is justly indebted to the plaintiff; (2) the attachment is not sought for the purpose of injuring or harassing the defendant; (3) the plaintiff will probably lose his debt unless the writ of attachment is issued; and (4) specific grounds for the writ exist under Section 61.002."   *Id.* at *1–2 (citing Tex. Civ. Prac. & Remedies Code § 61.001 (Vernon 1997)).

89.     There are nine grounds under Section 61.002, at least one of which must be present before a prejudgment writ of attachment can be issued:

(1)     the defendant is not a resident of this state or is a foreign corporation or is acting as such;

(2)     the defendant is about to move from this state permanently and has refused to pay or secure the debt due the plaintiff;

(3)     the defendant is in hiding so that ordinary process of law cannot be served on him;

(4)     the defendant has hidden or is about to hide his property for the purpose of defrauding his creditors;

(5)     the defendant is about to remove his property from this state without leaving an amount sufficient to pay his debts;

(6)     the defendant is about to remove all or part of his property from the county in which the suit is brought with the intent to defraud his creditors;

(7)     the defendant has disposed of or is about to dispose of all or part of his property with the intent to defraud his creditors;

(8)     the defendant is about to convert all or part of his property into money for the purpose of placing it beyond the reach of his creditors; or

(9)     the defendant owes the plaintiff for property obtained by the defendant under false pretenses.

*Id.* (citing Tex. Civ. Prac. & Remedies Code § 61.001).

90.     Under Texas law, "a plaintiff may obtain a writ of attachment by filing an affidavit (or offering other evidence) that satisfies each of the elements of Section 61.001 and establishes the amount that the plaintiff demands." *Id.* (citing Tex. Civ. Prac. & Remedies Code § 61.022). "If granted, a writ of attachment 'creates a lien from the date of levy on the real property attached, on the personal property held by the attaching officer, and on the proceeds of any attached personal property that may have been sold.'" *Id.* (citing Tex. Civ. Prac. & Remedies Code § 61.061).

91.     Through a system of false pretenses and deceit, Defendants stole millions of dollars in retirement assets from the Plans' participants. Defendants orchestrated the fraudulent transfer of funds from the Plans to a business account held by Vantage Benefits. Upon information and belief, Plaintiff alleges that this business account had a balance of $0 at the time it was seized by the DOJ. Defendants are most certainly justly indebted to the Plaintiff and the Plans' participants, and Plaintiff does not seek this writ of attachment for the purpose of injuring or harassing Defendants. Given the indeterminate status of Defendants' solvency, and any

property under their possession or control, it is likely that Plaintiff will lose this debt unless the writ of attachment is issued.

92.     Plaintiff understands that, on October 25, 2017, the FBI executed a search warrant at Vantage Benefits' offices in Dallas, Texas. Terri Langford, *FBI raids Dallas financial office amid allegations of missing retirement funds*, Dallas Morning News (October 31, 2017), https://www.dallasnews.com/news/downtown-dallas/2017/10/31/fbi-raids-dallas-office-401k-manager-vantage-benefits.  Upon information and belief, Plaintiff alleges that the DOL and DOJ shut down Vantage Benefits and seized all of its accounts, including the Bank of America business account into which the fraudulent wire transfers were routed.

93.     Defendants stole millions of dollars from the Plans under false pretenses. Vantage Benefits is a foreign corporation existing under the laws of the State of California. Upon information and belief, Plaintiff alleges that Defendants Jeffrey A. Richie and Wendy K. Richie may be in hiding, and have hidden or are about to hide the millions of dollars of retirement assets that Defendants fraudulently stole from the Plans.  And upon information and belief, Plaintiff alleges that Defendants are about to dispose of all or part of their property with the intent to defraud Plaintiff, the Plans and the participants in the Plans.

94.     In light of the extreme circumstances surrounding Defendants' fraudulent activity, the uncertainty as to the whereabouts of Jeffrey A. Richie and Wendy K. Richie, and the location of the funds that Defendants stole from the Plans, the immediate issuance of a writ of attachment is necessary to secure the debt Defendants owe to the Plans.

95.     Plaintiff seeks a temporary and immediate injunction for an attachment against any of the Plans' assets that Defendants systematically and fraudulently transferred in violation of the Uniform Fraudulent Transfer Act ("UFTA").  Tex. Bus. & Com. Code §§ 24.005 and 24.008(a)(2).

96.     The Plans are creditors under the UFTA's statutory definition: a "creditor" is any person who has a claim. Tex. Bus. & Com. Code § 24.002(4).  A "claim" is any "right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Tex. Bus. & Com. Code § 24.002(3).

97.     Plaintiff on behalf of the Plans has a claim to all of the assets that Defendants fraudulently stole from the Plans.  Plaintiff seeks a writ of attachment because, upon information and belief, Plaintiff alleges that Defendants have or intend to transfer assets that Defendants stole from the Plans out of the Plaintiff's reach.  A temporary injunction is necessary to "preserve the status quo of the litigation's subject matter pending a trial on the merits." *Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 622 (Tex. App.—Dallas 2004) (where the Dallas Court of Appeals affirmed a temporary injunction based on the danger the defendant would not be able to satisfy a judgment).

98.     For purposes of ordering a temporary injunction "the legal issues before the trial judge . . . are whether the applicant showed a probability of success and irreparable injury; the underlying merits of the controversy are not presented." *Id.*

99.     Upon information and belief, Plaintiff alleges that Defendants have or will attempt to dispose of the assets that Defendants stole from the Plans.  Upon information and belief, Plaintiff alleges that, at the time it was seized by the DOJ, the Bank of America business account into which the fraudulently transferred Plan assets were routed had a balance of $0.  A temporary injunction establishing a writ of attachment to any remaining assets taken from the Plans, or any properly under Defendants' possession or control, is necessary to prevent further irreparable injury to the Plans.

100.    Moreover, a Dallas County District Court has already granted an application for a

temporary injunction in a case against Vantage Benefits and Jeffrey Richie which involves nearly identical facts. *See* Dallas County District Court Case No. DC-17-15265, Docket No. 42. In that case, the Court found that "the evidence demonstrates a probable right to recovery for unlawful transfers of assets of the [CPI] 401(k) Plan." *Id.* The Court found that this order was "necessary to preserve the status quo and prevent further transfer of assets or funds" because "further transfers would comprise an irreparable injury." *Id.* The same is true here.

### EIGHTH CLAIM FOR RELIEF
(Against All Defendants, and DOES 1 through 10, Inclusive, for Common Law Fraud)

101.    Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

102.    The elements of common law fraud include: "(1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (citing *Cyrak v. Lemon*, 919 F.2d 320 (5th Cir. 1990)). To plead fraud with particularity, Plaintiff must show the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Id.* (citing *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994); *Melder v. Morris*, 27 F.3d 1097, 1100 n. 5 (5th Cir. 1994).

103.    Between June 3, 2016 and June 7, 2017, Defendants, and each of them, directed approximately thirty-five (35) fraudulent transfers from participant accounts in the Plans to a Vantage Benefits account held at Bank of America. Thirty-four (34) of these fraudulent transfers were made from the MBA 401(k) Plan, totaling approximately $2,249,079.99. And one of these fraudulent transfers was made from the MBA Cash Balance Plan, totaling approximately $94,750.00. In total, Defendants stole approximately $2,269,653.43 from the Plans between June 3, 2016 and June 7, 2017.

170236.v11

104.    Defendants improperly instructed MG Trust Company, the Plans' trustee, to complete these fraudulent wire transfers using, at times, fake participant names and Social Security numbers.  These wire transfers were completed using bank routing and bank account numbers that corresponded to a Vantage Benefits business account held at Bank of America. MG Trust Company completed these wire transfers even though it knew or should have known that the transfers were fraudulent because the wire transfers were being made to the Bank of America account in the name of Vantage Benefits and not to Hilltop Securities, the purported transferee in the instructions received by MG Trust Company from the Defendants.  In addition, many of the wire transfers were made from participant accounts in in the Plans in amounts that greatly exceeded the actual value of the accounts from which the transfers were made.  And MG Trust Company completed these wire transfers despite the frequency of the transfers over the course of roughly twelve months, and the fact that MG Trust Company was at all times aware that the transfers nearly drained the entire balance of the Plans.

105.    Defendants disguised their theft by creating falsified account statements and participant website information about the balance of the participants' accounts, with the intent to defraud Plaintiff and the Plans' participants.  Plaintiff and the Plans' participants relied on these misrepresentations to their great detriment because, while it appeared that their accounts contained the proper amount of funds, Defendants directed disbursements of millions of dollars from the Plans to their own business account at Bank of America.  Plaintiff, the Plans, and consequently the Plans' participants, were injured by approximately $2,269,653.43 as a result of Defendants' fraudulent scheme.

106.    Under Texas law "[f]raudulent misrepresentations . . . coupled with damages caused by the misrepresentation, will support an award for exemplary damages."  *Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1090 (5th Cir. 1996) (citing *Artripe v. Hughes,* 857 S.W.2d 82, 87

(Tex. App.—Corpus Christi 1993, writ denied); *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 436 (Tex. 1986); *Trenholm v. Ratcliff,* 646 S.W.2d 927, 933 (Tex. 1983)).   These "exemplary damages are recoverable under . . . common-law fraud causes of action." *Id.*

107.   Where exemplary damages are awarded, "a ratio of approximately 3 to 1 provided a good rule of thumb for reviewing the reasonable proportional relationship of exemplary damages to actual damages under Texas law." *Id.* (citing *Maxey v. Freightliner Corp*., 665 F.2d 1367 (5th Cir. 1982)).

108.   Through a system of fraud and deceit, Defendants stole millions of dollars from the Plans and the Plans' participants.   Due to the extreme depravity of Defendants' conduct, Plaintiff seeks damages in an amount to be shown according to proof, but in the amount of at least $2,269,653.43, plus lost earnings or interest thereon, and exemplary damages in the amount of $6,808,960.29.

### <u>NINTH CLAIM FOR RELIEF</u>
(Against Vantage Benefits Administrators, Inc., and DOES 1 through 10, Inclusive, for Common Law Professional Negligence)

109.   Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

110.   "Under Texas law, negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 314 (5th Cir. 2002) (citing *Gutierrez v. Excel Corp*., 106 F.3d 683, 687 (5th Cir. 1997)).

111.   To "establish liability for professional negligence, the plaintiff must show the existence of a duty, a breach of that duty, and damages arising from the breach." *Id.* (citing *Banc One Capital Partners Corp. v. Kneipper,* 67 F.3d 1187, 1198 (5th Cir. 1995).   The "duty owed

by a professional to his client derives from their contractual relationship and requires that the professional use the skill and care in the performance of his duties commensurate with the requirements of his profession.'"  *In re Capco Energy, Inc.*, 669 F.3d 274, 279 (5th Cir. 2012) (internal quotation marks omitted).  "In an action for professional negligence in Texas, the question whether a defendant owes a duty to the plaintiff is a question of law."  *Fed. Sav. & Loan Ins. Corp. v. Texas Real Estate Counselors, Inc*., 955 F.2d 261, 265 (5th Cir. 1992) (where the Court noted, "[w]hile all individuals owe a duty to exercise reasonable care to avoid foreseeable injury to others, professionals, by virtue of their special skill and expertise, are held to a higher standard of reasonable care.").

112.    At all relevant times, Vantage Benefits was contractually obligated to perform third-party administrative and recordkeeping services for Plaintiff and the Plans.  In its Services Agreement with Plaintiff, Vantage Benefits warranted "that all Services shall be performed in a good and workmanlike manner, in compliance with all applicable Laws, rules and regulations, and consistent with current industry standards applicable to service providers in the Benefits Administration industry."  In performing these administrative and recordkeeping services, Vantage Benefits was acting in a non-fiduciary capacity.  And by way of this contractual relationship, Vantage Benefits owed Plaintiff and the Plans a duty to perform its third-party and administrative and recordkeeping services for the Plans with the skill and care commensurate with the requirements of its profession.

113.    Between June 3, 2016 and June 7, 2017, Vantage Benefits caused the fraudulent transfer of roughly $2,269,653.43 from the Plans to a Vantage Benefits business account held at Bank of America.  Vantage Benefits caused this fraudulent activity by creating falsified account statements and website information about the balance of the participants' accounts to hide the fact that millions of dollars in the Plans' assets were being siphoned out of the Plans.

170236.v11

114.    Plaintiff and the Plans' participants relied on these misrepresentations to their great detriment because, while it appeared that their accounts contained the proper amount of funds, Vantage Benefits directed disbursements of millions of dollars from the Plans to its own business account at Bank of America.  By facilitating these fraudulent transfers and creating falsified account statements and website information, Vantage Benefits breached the high standard of professional care it owed to Plaintiff and the Plans.  Plaintiff and the Plans were severely damaged as the direct proximate result of Vantage Benefits' breaches.

115.    By virtue of these breaches, Plaintiff and the Plans were damaged in an amount to be shown according to proof, but in the amount of at least $2,269,653.43, plus lost earnings or interest thereon.

## TENTH CLAIM FOR RELIEF

(Against Vantage Benefits Administrators, Inc., and DOES 1 through 10, Inclusive, for Common Law Negligent Misrepresentation)

116.    Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

117.    Texas has "adopted the common law cause of action for negligent misrepresentation that results in pecuniary loss as set out in the RESTATEMENT (Second) of TORTS § 552 (1977)." *Engle v. Dinehart*, 213 F.3d 639 (5th Cir. 2000).  Section 552(1) of the Restatement provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

118.    And the liability stated in Section 522(1) is limited to loss suffered:

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he

31

intends the information to influence or knows that the recipient so intends or in
a substantially similar transaction.

*Id.* at §552(2).  The Texas Supreme Court intended to "adopt section 552 as a whole," and the

Fifth Circuit "has interpreted the decisions accordingly."  *Id.* (citing *Scottish Heritable Trust,*

*PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 612-14 (5th Cir. 1996)).

119.    In the course of its business and profession as third-party administrator and

recordkeeper for the Plans, Vantage Benefits supplied false information to Plaintiff and the

Plans' participants with respect to the value of the Plans' assets and the participants' accounts.

120.    Plaintiff and the Plans' participants were the intended beneficiaries of the

information that Vantage Benefits supplied.   Plaintiff and the Plans' participants justifiably

relied on these misrepresentations to their great detriment because, while it appeared that their

accounts contained the proper amount of funds, Vantage Benefits directed disbursements of

millions of dollars from the Plans to its own business account at Bank of America.   The Plans

were severely damaged as the direct proximate result of Plaintiff's and the participants'

justifiable reliance on the false representations made by Vantage Benefits.

121.    Vantage Benefits failed to exercise reasonable care and competence in obtaining

and communicating accurate information about the actual value of the Plans' assets to Plaintiff

and the Plans' participants.

122.    By virtue of Vantage Benefits' failure to exercise reasonable care and

competence, Plaintiff and the Plans were damaged in an amount to be shown according to proof,

but in the amount of at least $2,269,653.43, plus lost earnings or interest thereon.

## ELEVENTH CLAIM FOR RELIEF

(Against all Defendants for Common Law Negligence)

123.   Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

124.   Under Texas law, "[t]o sustain a negligence action, the plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach." *Shakeri v. ADT Sec. Servs., Inc*., 816 F.3d 283, 292 (5th Cir. 2016) (citing *Lee Lewis Const., Inc. v. Harrison*, 70 S.W. 3d 778, 782 (Tex. 2001)). A breaching party's "conduct may often ostensibly implicate both contractual obligations and various tort duties." *Id.* (citing *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008)).

125.   A party may state a negligence claim sounding in tort "when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.* (internal quotation marks omitted).  In this circumstance, the "nature of the injury most often determines which duty or duties are breached." *Id.* (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W. 2d 617, 618 (Tex. 1986). And "[i]f the injury would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort." *Id.* (internal quotation marks omitted).

126.   Defendants had authority and control over the disposition of the Plans' assets.  By virtue of this authority and control, Defendants owed Plaintiff and the Plans a duty of care by virtue of their responsibility for the Plans' assets.

127.   Between June 3, 2016 and June 7, 2017, Defendants facilitated and/or failed to prevent the fraudulent transfer of roughly $2,269,653.43 from the Plans to a Vantage Benefits business account held at Bank of America.  In so doing, Defendants breached the duty of care they owed to Plaintiff and the Plans.

128.     As a direct result of Defendants breach, Plaintiff and the Plans were severely damaged.  By virtue of these breaches, Plaintiff and the Plans were damaged in an amount to be shown according to proof, but in the amount of at least $2,269,653.43, plus lost earnings or interest thereon.

### TWELFTH CLAIM FOR RELIEF
(Against all Defendants for Violation of the Texas Theft Liability Act)

129.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

130.     Through the fraudulent scheme that systematically transferred millions of dollars in retirement benefits from the Plans, Defendants unlawfully appropriated, secured and stole monies from Plaintiff in violation of Texas Penal Code § 31.01 and § 31.03 with the intent to deprive Plaintiff of such property.  Plaintiff has sustained damages as a result of such theft and sues herein for recovery of no less than $2,269,653.43 plus pre-judgment interest and attorneys' fees pursuant to the Texas Theft Liability Act, Texas Civil Practice and Remedies Code § 134.001 *et seq.*

### THIRTEENTH CLAIM FOR RELIEF
(Against Vantage Benefits Administrators, Inc., and DOES 1 through 10, Inclusive, for Breach of Contract)

131.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

132.     At all relevant times there existed a valid, written Service Agreement between Plaintiff and Vantage Benefits wherein Vantage Benefits was contractually obligated to perform third-party administrative and recordkeeping services for Plaintiff and the Plans.  In its Services Agreement with Plaintiff, Vantage Benefits warranted "that all Services shall be performed in a good and workmanlike manner, in compliance with all applicable Laws, rules and regulations, and consistent with current industry standards applicable to service providers in the Benefits

Administration industry." Vantage Benefits was contractually obligated to perform its third-party administrative and recordkeeping services for the Plans with the skill and care commensurate with the requirements of its profession.

133.    Between June 3, 2016 and June 7, 2017, Vantage Benefits caused the fraudulent transfer of roughly $2,269,653.43 from the Plans to a Vantage Benefits business account held at Bank of America. Vantage Benefits caused this fraudulent activity by creating falsified account statements and website information about the balance of the participants' accounts to hide the fact that millions of dollars in the Plans' assets were being siphoned out of the Plans.

134.    Plaintiff performed or was excused from performing any and all of its obligations under the Services Agreement.

135.    By fraudulently transferring millions of dollars from the Plans for its own benefit and falsifying account statements and website information, among other things, Vantage Benefits breached its obligations set forth in the Services Agreement causing injury to Plaintiff in an amount not less than $2,269,653.43 plus pre-judgment interest and attorneys' fees.

### JURY DEMAND

136.    Plaintiff requests that this matter be tried before a jury with respect to the Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth and Thirteenth Claims for Relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor as follows:

1.    On Plaintiff's First, Second, Third, Fourth, and Sixth Claims for Relief, for losses to the Plans in the amount of at least $2,269,653.43, plus lost earnings or interest thereon;

2.    On Plaintiff's Fifth Claim for Relief, for an injunction: (i) enjoining Defendants

from further transferring, disposing of, or otherwise dealing in any of the Plans'
assets, (ii) ordering Defendants, and each of them, to return any assets transferred
from the Plans back to the Plans; and (iii) permanently barring Defendants, and
each of them, from acting as a fiduciary for or providing any services for any
employee benefit plan governed by ERISA;

3.      On Plaintiff's First through Sixth Claims for Relief, for an award of Plaintiff's
reasonable attorney's fees and costs pursuant to ERISA § 502(g), 29 U.S.C. §
1132(g);

4.      On Plaintiff's Seventh Claim for Relief, a temporary injunction ordering a writ of
attachment against any property under Defendants' custody or control, and any of
the Plans' assets that Defendants received through their fraudulent scheme, to
secure debt that Defendants owe to Plaintiff in the amount of at least
$2,269,653.43, plus lost earnings or interest thereon;

5.      On Plaintiff's Eighth Claim for Relief, for damages in the amount of at least
$2,269,653.43, plus lost earnings or interest thereon, and exemplary damages in
the amount of $6,808,960.29;

6.      On Plaintiff's Ninth Claim for Relief, for damages in the amount of at least
$2,269,653.43, plus lost earnings or interest thereon;

7.      On Plaintiff's Tenth Claim for Relief, for damages in the amount of at least
$2,269,653.43, plus lost earnings or interest thereon;

8.      On Plaintiff's Eleventh Claim for Relief, for damages in the amount of at least
$2,269,653.43, plus lost earnings or interest thereon;

9.      On Plaintiff's Twelfth Claim for Relief, for damages in the amount of at least
$2,269,653.43, plus lost earnings or interest thereon, attorneys' fees and

exemplary damages;

10.     On Plaintiff's Thirteenth Claim for Relief, for damages in the amount of at least

$2,269,653.43, plus lost earnings or interest thereon and attorneys' fees;

11.     On all of Plaintiff's Claims for Relief:

a.     Avoidance of all fraudulent transfers from the Plans;

b.     For costs of suit herein; and

c.     For such other and further relief as the Court may deem just and proper.

DATED:   December 4, 2017            Respectfully submitted,

By:  *Matthew K. Good*
    Matthew K. Good
    State Bar No. 24099314
    CONNER & WINTERS, LLP
    1700 Pacific Ave., Ste. 2250
    Dallas, Texas 75201
    Telephone:  (214) 217-8888
    Facsimile:  (214) 217-8052
    Email:      mgood@cwlaw.com

    R. Bradford Huss (CA SBN 71303)
    (*Pro hac vice* to be filed)
    Dylan D. Rudolph (CA SBN 278707)
    (*Pro hac vice* to be filed)
    TRUCKER ✦ HUSS
    A Professional Corporation
    One Embarcadero Center, 12th Floor
    San Francisco, California  94111
    Telephone: (415) 788-3111
    Facsimile:  (415) 421-2017
    E-mail:      bhuss@truckerhuss.com
          drudolph@truckerhuss.com