IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MBA ENGINEERING, INC., AS SPONSOR AND ADMINISTRATOR OF THE MBA ENGINEERING, INC. EMPLOYEES 401(K) PLAN AND THE MBA ENGINEERING, INC. CASH BALANCE PLAN, AND CRAIG MEIDINGER, <br><br> PLAINTIFFS, <br><br> V. <br><br> VANTAGE BENEFITS ADMINISTRATORS, INC., JEFFREY RICHIE, WENDY K. RICHIE, AND MATRIX TRUST COMPANY, <br><br> DEFENDANTS. | CASE NO. 3:17-CV-3300-L (BK) |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the district judge's order of reference, Doc. 38, now before the Court is Defendant Matrix Trust Company's *(1)Motion to Dismiss for Improper Venue, or Alternatively, to Transfer and (2) Motion to Dismiss for Failure to State a Claim*. Doc. 25. Upon review of the relevant pleadings and applicable law, the motion should be **GRANTED** to the extent stated herein.

**I.   BACKGROUND**

Plaintiff MBA Engineering, Inc., is a sponsor and administrator of two employee benefit plans: (1) the MBA Engineering, Inc., Employees 401(k) Plan and (2) the MBA Engineering, Inc., Case Balance Plan (collectively, the "Plans"). Doc. 14 at 1. Defendant Vantage Benefits

Administrators, Inc. ("Vantage Benefits") served as a third-party administrator and record-keeper for the Plans, and Defendants Jeffrey and Wendy Richie are executives at Vantage Benefits (collectively, the "Vantage Defendants"). Doc. 14 at 7.

On December 5, 2017, Plaintiff MBA Engineering filed its original complaint asserting 13 claims against the Vantage Defendants. Doc. 1 *passim*. A few months later, Plaintiff filed the operative complaint, adding the Plans' Trustee, Craig Meidinger, as a plaintiff, and the Plans' directed custodian, Matrix Trust Company ("Matrix"), as a defendant. Doc. 14. As relevant here, Plaintiffs assert seven claims against Matrix for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), common law negligence, and common law professional negligence.[1] Doc. 14 at 19, 23, 27, 29, 34, 45, 48.

Matrix now moves to dismiss Plaintiffs' claims for improper venue or for transfer of Plaintiffs' claims to the District of Colorado. Doc. 26. In the alternative, Matrix moves to dismiss Plaintiffs' claims for failure to state a claim. Doc. 26.

## II.  APPLICABLE LAW

Federal Rule of Civil Procedure Rule 12(b)(3) provides for dismissal of civil actions for improper venue. FED. R. CIV. P. 12(b)(3). In ruling on a motion to dismiss for improper venue, the Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs Co. v. Modec (USA), Inc*., 240 Fed. App'x 612, 615 (5th Cir. 2007). However, "[w]here the defendant submits affidavits or evidence controverting specific facts alleged in the complaint, the Court is no longer required to accept those controverted facts

---

[1] The Vantage Defendants failed to answer or otherwise respond to Plaintiffs' complaint, and the Clerk of Court entered a default against them on July 18, 2018. Doc. 37. Plaintiffs' *Motion for Default Judgment* remains pending. Doc. 36.

as true[.]" *Galderma Laboratories, L.P. v. Teva Pharmaceuticals USA, Inc.*, 290 F. Supp. 3d 599, 612 (N.D. Tex. 2017).

In assessing a motion to transfer pursuant to 28 U.S.C. §1404(a), the Court first must determine whether the judicial district to which transfer is sought is a district in which the claims could have been filed. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). If the action could have been brought in the alternate venue, the Court must weigh a series of non-exhaustive private and public interest factors, none of which is given dispositive weight. *In re Volkswagen of American, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). The presence of a forum selection clause is "a significant factor that figures centrally in the district court's calculus." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Id.*

### III.  PARTIES' ARGUMENTS AND ANALYSIS

A. *Motion to Dismiss for Improper Venue*

Pursuant to Rule 12(b)(3), Matrix argues that venue is improper in the Northern District of Texas because the Court might at some point enter a default judgment against the Vantage Defendants, "leav[ing] Plaintiffs and Matrix as the only parties," and thus reasons that "there will be no claims as to which venue in this district is proper." Doc. 26 at 16. In response, Plaintiffs argue that the Court must consider the Vantage Defendants when determining proper venue, and

3

in any event, its claims against Matrix "are properly venued in this District" pursuant to ERISA section 1132(3). Doc. 32 at 16-17.

Matrix's reasoning is flawed because venue is not affected by the dismissal of a party. *See Cunningham v. Nationwide Sec. Solutions, Inc.*, No. 3:17-CV-337-S-BN, 2018 WL 4575005, at *8 (N.D. Tex. Aug. 31, 2018) (Horan, J.), *adopted at* 2018 WL 4568803 (N.D. Tex. Sept. 24, 2018) (Scholer, J.) ("The district in which proper venue lies 'is determined at the time the complaint is filed and is not affected by a subsequent change of parties.'" (citations omitted)); *see also Sampson Indust., Inc. v. Amega Indust., Inc.*, No. 3-98-CV-1440-P, 1998 WL 826907, at *3 n.9 (N.D. Tex. Nov. 18, 1998) (Solis, J.) (same). Thus, even if the Court enters a default judgment against the Vantage Defendants, it would have no impact on the Court's venue determination. Moreover, because Matrix fails to controvert Plaintiffs' venue allegations in the original complaint, the Court must accept them as true. *See Galderma Laboratories,* 290 F.Supp.3d at 605-06 (N.D. Tex. 2017) (the Court "initially accepts as true all of the well-pleaded allegations" until a defendant "submits affidavits or evidence controverting specific facts alleged in the complaint, [at which point] the Court is no longer required to accept those controverted facts as true"). Accordingly, Matrix's Rule 12(b)(3) motion to dismiss for improper venue should be **DENIED**.

    B.  *Motion to Transfer*

        i.        Forum Selection Clause

Matrix argues that its "custodial agreement" "contains a forum selection clause requiring this lawsuit to be brought in the District of Colorado." Doc. 26 at 9. Specifically, Matrix avers that Plaintiffs alleged in their original complaint that a valid written "Services Agreement" existed between MBA Engineering and Vantage Benefits, and that therein MBA Engineering

4

agreed to be bound by Matrix's custodial agreement. Doc. 26 at 11. Plaintiffs deny the existence of any "custodial agreement between Plaintiffs and Matrix," because no signed copy of "any master services agreement" between MBA Engineering and Vantage Benefits has been located. Doc. 32 at 20-21. Plaintiffs maintain that upon discovering that no such services agreement existed, they amended their complaint "to remove reference to any such agreement." Doc. 32 at 21-22.

"Before the Court turns to the forum selection clause, it must determine whether a valid contract [containing such a clause] exists between the parties." *Abramson v. America Online, Inc.*, 393 F.Supp. 2d 438, 440 (N.D. Tex. 2005). Matrix has submitted, *inter alia*, the declaration of its Senior Vice President, Will Beutelschies, in which he explains that Matrix's records indicate that Vantage typically chose to incorporate into their master services agreements custodial agreements, containing the relevant forum selection clause, but concedes that no signed copy of such agreement governing the Plans has been found. Doc. 27 at 5. Beutelschies also points to Matrix customer records which include numerous other master agreements between Vantage and its customers that are identical in all material respects. Doc. 27 at 5-6.

Matrix's position that such an agreement exists between MBA Engineering and Vantage Benefits is speculative at best. Matrix reasons that since its records "indicated" that Vantage Benefits typically entered into services agreements, it must have done so in this instance. This argument is a stretch. Ultimately, Matrix has not attached any services agreement between Vantage Benefits and MBA Engineering because no such document can be located. Doc. 27 at 5. The fact that Vantage Benefits entered into services agreements with other entities does not establish that it did so with MBA Engineering. Consequently, there is no binding forum selection clause in this case.

5

ii.    1404(a) Private and Public Factors

The lack of a forum-selection clause notwithstanding, Matrix argues that "a balancing of the relevant factors favors a transfer to the District of Colorado." Doc. 26 at 19. Plaintiff disagrees. Doc. 32 at 23. Before the factors can be applied, however, Matrix must establish that the District of Colorado is a district in which Plaintiffs' suit could have been filed. *Your Town Yellow Pages, LLC. v. Liberty Press LLC*, No. 3:09-CV-0605-D, 2009 WL 3645094, at *12 (N.D. Tex. Nov. 2, 2009) (Fitzwater, J.). In other words, the Court must find that the District of Colorado "has both personal jurisdiction over the defendant potentially being transferred and that the district is a proper venue for this action." *Id.*

"This being an ERISA case, venue is proper 'in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." *Frost v. ReliOn, Inc.*, No. 3:06-CV-0822-G, 2007 WL 670550, at * (N.D. Tex. Mar. 2, 2007) (Fish, C.J.) (quoting 29 U.S.C. § 1132(e)(2)). Moreover, in an ERISA suit, the Court may exercise personal jurisdiction over a defendant so long as the defendant has "sufficient minimum contacts with the United States." *Verizon Employee Benefits Comm. v. Jaeger*, No. 3:05-CV-1860-L, 2006 WL 2880451, at * (N.D. Tex. Sept. 28, 2006) (Lindsay, J.). Here, Plaintiffs do not dispute that Matrix resides in the District of Colorado and concede that Matrix has "sufficient contacts with the United States." Doc. 32 at 19.

Since personal jurisdiction and proper venue in the District of Colorado are not in dispute, the Court turns to an analysis of the relevant factors. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."

6

*Volkswagen*, 545 F.3d at 315.  The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiar of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law."  *Id.*  Moreover, a plaintiff's choice of forum "should be respected" unless "the transferee venue is clearly more convenient."  *Id.*

Matrix contends that all of the private interest factors favor the District of Colorado, where the Plans' custodial records are maintained and Matrix's employees reside.  Doc. 26 at 19.  As to the public interest factors, Matrix maintains that a "transfer will not cause any significant administrative difficulties" because "there is no material difference between the average time to trial" in this District and the District of Colorado, and there is no particular "local interest" invoked in this case.  Doc. 26 at 19-20.  In response, Plaintiffs highlight that the Vantage Defendants and its former employees who have relevant knowledge are in Texas, and Vantage's records, business bank accounts, and evidence supporting damages will come mostly from this District.  Plaintiffs conclude that "this District has a localized interest in deciding this dispute."  Doc. 32 at 23.

Plaintiffs' reasoning is sound as it relates to the claims they assert.  The offices of Vantage Benefits are within the Northern District of Texas.  Therefore, to the extent that Matrix made "numerous and substantial transfers" directly to Vantage Benefits, as alleged in the Amended Complaint, Doc. 14 at 2, evidence of such transfers will likely be at the Vantage Benefits' offices within this District.  Also, since Defendants Jeffrey and Wendy Richie reside in this District, evidence of their alleged actions will likely be found here too.  And even if the Court enters a default judgment against the Vantage Defendants, Plaintiffs' claims against

7

Matrix are intertwined with the claims against the Vantage Defendants such that much of the evidence will likely be found in this District. Finally, even though Matrix resides in Colorado, all three of the Vantage Defendants reside in this District.

The public interest factors also favor Plaintiffs. Because three of the four Defendants reside in this District, there exists a "local interest" in having the case remain in the District. Moreover, the transfer of Plaintiffs' claims to the District of Colorado could potentially delay the resolution of this case, which has been pending for over a year in this Court. In sum, Matrix simply has not shown that the District of Colorado is "clearly more convenient" than the Northern District of Texas. *Volkswagen*, 545 F.3d at 315. Accordingly, Matrix's motion to transfer should be **DENIED**.

C. *Motion to Sever*

Matrix argues that since the Vantage Defendants "have defaulted," and for the reasons asserted in its motion to transfer, the Court should sever Plaintiffs' claims against Matrix. Doc. 26 at 20. In opposition, Plaintiffs argue that severance is inappropriate because "Plaintiffs' claims against Matrix are not peripheral, but inseparable from its claims against the Vantage Defendants." Doc. 32 at 24. Plaintiffs reason that it "is premature to assume the Court will enter default judgment against the Vantage Defendants until the claims against Matrix are adjudicated because Matrix and the Vantage Defendants are jointly and severally liable." Doc. 32 at 24.

Federal Rule of Civil Procedure 21 allows a court to "at any time, on just terms, add or drop a party" and "sever any claim against a party." FED. R. CIV. P. 21. The Court has broad discretion in determining whether to sever parties or claims. *Anderson v. Red River Waterway Comm'n,* 231 F.3d 211, 214 (5th Cir. 2000). In determining whether to sever and transfer, courts have looked to three factors: (1) whether the remaining claims are peripheral to the severed

8

claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the section 1404 factors warrant transfer. *TiVo, Inc. v. AT&T, Inc.*, No. 2:09-CV-259, 2010 WL 11436066, at *1 (E.D. Tex. Sept. 17, 2010).

Plaintiffs' claims against the Vantage Defendants are not "peripheral" to those against Matrix because Plaintiffs allege that all defendants acted in concert. *See, e.g.*, Doc. 14 at 3 ("Matrix unilaterally completed each fraudulent transfer of assets of the Plans into the Vantage Benefits bank account solely at the instruction and direction of the Vantage Defendants."). Moreover, adjudication of Plaintiffs' claims against Matrix would not "dispose of the remaining claims" because Plaintiffs assert additional claims against the Vantage Defendants. *See generally* Doc. 14. Finally, as detailed *supra*, the section 1404 factors do not warrant transfer. Therefore, Matrix's motion for severance should be **DENIED**.

    D. *Motions to Dismiss for Failure to State a Claim*

        i.         Standing Under ERISA Section 502(a)(2) (Claims 2 and 4)

Matrix argues that Plaintiffs lack standing to sue under ERISA because they do not seek recovery "on behalf of the Plans." Doc. 26 at 22. Plaintiffs argue that they have standing to sue under Article III of the Constitution. *See* Doc. 32 at 25. They also, in a footnote, argue that they sue on behalf of the Plans because they seek to recover losses to the Plans. Doc. 32 at 25.

As Matrix points out, Plaintiffs conflate statutory standing with Article III standing. Doc. 35 at 6. While it is true that to bring suit a plaintiff must have Article III standing, *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 571 (1992), Matrix contests Plaintiffs' standing to sue under ERISA's statutory provisions, not Article III. Article III standing is distinct from statutory standing—the former is derived from the United States Constitution's case or controversy

9

requirement, while the latter addresses whether a "statute grants the plaintiff the cause of action that he asserts." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S.Ct. 1296, 1302 (2017).

Dismissal for lack of statutory standing may be granted under Rule 12(b)(6). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). Section 502(a)(2) of ERISA provides a claim for injuries caused by a fiduciary's violation of section 409 of ERISA. 29 U.S.C. 1102(a). Section 409 governs fiduciary breaches that cause harm to a plan as a whole:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan any losses to the plan* resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary.

29 U.S.C. § 1109(a) (emphasis added).

"The Supreme Court, noting ERISA's primary concern with the possible misuse or poor management of plan assets, has stated that the 'loss to the plan' language in § 1109 limits claims to those that inure to the benefit of the plan as a whole." *Matassarin v. Lynch*, 174 F.3d 549, 566 (5th Cir. 1999). Accordingly, to have standing under section 502(a), a plaintiff must bring suit on behalf of a plan as a whole. *See Milofsky v. Am. Airlines, Inc.*, 404 F.3d 338, 343 (5th Cir. 2005) (affirming dismissal for want of standing under section 502(a)(2) and noting that the plaintiff's complaint concerned "individualized relief" and did not "seek to vindicate the rights or interests of the plan as a whole"); *Vonkeisler v. Unigate Restaurants, Inc.*, 20 F.3d 468, 468 (5th Cir. 1994) (per curium) ("[a]ctions for breach of fiduciary duty [under section 1109] may be brought only in a representative capacity on behalf of the plan as a whole.").

In their response, Plaintiffs reason that their complaint "clearly seeks recovery on behalf of the Plans" because their "Prayer" seeks "losses to the Plans." Doc. 32 at 25 n.10. Plaintiffs' reasoning is unsound. That Plaintiffs seek to recover losses to the Plans does not establish that

10

they have sued on behalf of the Plan as a whole. In fact, in its prayer, Plaintiffs ask the Court to "enter judgment in its favor," not in favor of the Plans. Doc. 14 at 50. Furthermore, the style of Plaintiffs' operative complaint shows that Plaintiffs suit is brought in their individual capacities as "Sponsor and Administrator" and "Trustee." Doc. 14 at 1. As such, any judgment rendered in favor of Plaintiffs would benefit Plaintiffs and not the Plans as a whole.

Other than seeking to recover losses to the Plans, Plaintiffs' operative complaint is devoid of any indication that its lawsuit is brought on behalf of the Plans as a whole. Accordingly, Plaintiffs lack standing to bring the two claims they filed under section 502(a)(2), and Matrix's motion to dismiss should be **GRANTED** as to Plaintiffs' second and fourth claims for relief. *See, e.g.*, *Constantine v. Am. Airlines Pension Benefit Plan*, No. 4:01-CV-108-E, 162 F.Supp. 2d 552, 557 (N.D. Tex. 2001) (dismissing breach of fiduciary duty cause of action for failure to state a claim and noting that "[a]ny reference to recovery on behalf of the Plan is absent from both Plaintiff's Complaint and Plaintiff's Opposition Brief.").

      ii.      Failure to State a Claim under Sections 406(b)(1), 406 (a)(1)(D), and 405(a) (Claims 6 and 11)

Matrix also argues that Plaintiffs have not alleged that Matrix was a fiduciary to the Plans as required to state a claim under the noted sections. Doc. 26 at 26. Specifically, Matrix avers that (1) the operative complaint "does not allege that Matrix Trust was named as a fiduciary in the plan documents," (2) the operative complaint "does not describe or refer to any procedure in the plan documents for naming a fiduciary," and (3) Matrix's custody of the Plans' assets does not create a fiduciary relationship to the Plans. Doc. 26 at 26-27. Matrix argues that such omission "is fatal" to counts six and eleven of the operative complaint, "which are based on

11

alleged violations of ERISA that apply only to fiduciaries." Doc. 26 at 26.[2] In opposition, Plaintiffs argue that Matrix "assumed fiduciary status when it took custody of the Plan's assets and acted unilaterally with those assets without Plaintiffs' direction or authorization." Doc. 32 at 29.

A person assumes fiduciary status under ERISA in three ways: (1) "as a named fiduciary in the instrument establishing the employee benefit plan"; (2) "by becoming a named fiduciary pursuant to a procedure specified in the plan instrument"; and (3) "as a 'functional fiduciary' under the broad authority, control, or advice provisions of ERISA § 3(21)(A)." *Perez v. Bruister*, 823 F.3d 250, 259 (5th Cir. 2016). It is undisputed that Matrix did not assume fiduciary status by (1) or (2). The Court thus turns to the third option.

Section 3(21)(A) provides that a person is a fiduciary with respect to a plan:

to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "A third-party administrator who merely performs ministerial duties or processes claims is not a fiduciary." *Reich v. Lancaster*, 55 F.3d 1034, 1047 (5th Cir. 1995) (citation omitted). "To be fiduciaries, such persons must exercise discretionary authority and control that amounts to actual decision making power." *Id.* at 1049.

---

[2] Matrix actually contends that its lack of fiduciary status is "fatal" to counts "VI and IX." Doc. 22 at 26. Since count nine is a claim asserted against the Vantage Defendants, the Court assumes that Matrix meant to say counts "VI and XI," since both counts six and eleven are asserted against Matrix and require fiduciary status.

Plaintiffs allege in their operative complaint that (1) by "holding the assets without any authorization from the Plaintiffs" and transferring the assets to Vantage Benefits "without authorization," Matrix exercised authority and control over the Plans' assets, Doc. 14 at 2; (2) "[t]here is no, and never has been, any agreement between Plaintiffs or the Plans and Matrix that authorized Matrix to make transfers of the assets of the Plans," Doc. 14 at 3; (3) Matrix acted "[a]t the sole direction of the Vantage Defendants," Doc. 14 at 3; and (4) Matrix "had no authorization or direction of any kind" from Plaintiffs or the Plans to transfer the assets to the Vantage Defendants. Doc. 14 at 9.

Plaintiffs never advance factual allegations demonstrating that Matrix "exercise[d] discretionary authority and control that amounts to decision making power." *Reich*, 55 F.3d at 1049. In fact, Plaintiffs allege the opposite—that Matrix acted *without* authority. Moreover, Plaintiffs allege that Matrix acted at the "sole discretion" of the Vantage Defendants. Doc. 14 at 3. Consequently, Matrix could not have had "discretionary authority" because it allegedly acted under the Vantage Defendants' orders.

Accordingly, Plaintiffs have failed to allege that Matrix acted as a fiduciary to the Plans. Since Plaintiffs' claims under counts six and eleven require Matrix to have had fiduciary status, Matrix's motion to dismiss those claims should be **GRANTED** as to those counts.

      iii.    Failure to State a Claim Under Section 502(a)(3) (Claim 8)

Matrix argues that section 502(a)(3) of ERISA only authorizes a court to grant relief "traditionally available in equity," and that since Plaintiffs seek compensatory damages, they seek relief traditionally unavailable in equity and thus fail to state a claim under section 502(a)(3). Doc. 26 at 25. Plaintiffs do not dispute Matrix's contention and, consequently, have abandoned their claim under section 502(a)(3). *See Black v. Panola Sch. Dist.*, 461 F.3d 584,

13

588 n.1 (5th Cir. 2006) (finding that a plaintiff abandoned a claim when she failed to defend the claim in a response to a motion to dismiss); *see also Erving v. Dallas Housing Authority*, No. 3:16-CV-1091-L, 2018 WL 4409797, at *5 (N.D. Tex. Sept. 17, 2018) (Lindsay, J.) ("When a party fails to pursue a claim or defense beyond the party's initial pleading, the claim is deemed abandoned or waived." (citing *Panola Sch. Dist.*, 461 F.3d at 588 n.1)); *Lighting Ballast Control, LLC v. Phillips Electronics North America Corp.*, No. 7:09-CV-29-O, 2011 WL 13128126, at *3 (N.D. Tex. May 25, 2011) (O'Connor, J.) (as in the circuit court, "failure to brief an argument in the district court waives that argument in that court." (internal citations omitted)).

That notwithstanding, Plaintiffs' claim for relief under section 502(a)(3) fails on the merits. Section 502(a)(3) only authorizes "those categories of relief that [are] typically available in equity." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256 (1993). "Equitable relief is contrasted with 'legal relief,' which constitutes claims seeking 'nothing other than compensatory damages.'" *Central States v. Health Special Risk, Inc*., 756 F.3d 356, 360 (5th Cir, 2014) (citing *Mertens*, 508 U.S. at 255). A judgment imposing "merely personal liability on the defendant to pay a sum of money" is a legal remedy. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). "An equitable remedy, by contrast, seeks the return 'of money or property [that is] identified as belonging in good conscience to the plaintiff [and can] clearly be traced to particular funds or property in the defendant's possession." *Id.*

Plaintiffs seek "recovery" of funds that were allegedly "stolen from the Plans, and lost earnings and interest on this principal amount." Doc. 32 at 26. Plaintiffs have not, however, sufficiently pled that Matrix is in possession of the funds that they seek. To the contrary, by its operative complaint and response to Matrix's instant motion, it appears that Plaintiffs contend that Matrix was in possession of the funds that Plaintiffs seek to recover but "transferred" or

14

"disposed" of those funds. *See* Doc. 14 at 30 (alleging that Matrix "had possession" of the funds but "unilaterally completed" "fraudulent wire transfers" from the funds to the Vantage Benefits business bank account); *see also* Doc. 32 at 30 ("While the Plans' assets were under Matrix's control, it disposed of over $2,200,000 in participant retirement funds by wiring these funds directly into Vantage's business account."). Therefore, Plaintiffs have not sufficiently pled that the funds they seek can be "clearly traced to particular funds" in Matrix's possession.[3]

Accordingly, Plaintiffs have failed to state a plausible claim under section 502(a)(3). *See Central States*, 756 F.3d 356, 360 (5th Cir. 2014) (affirming a district court's dismissal for failure to state a claim under section 502(a)(3) because, *inter alia*, the plaintiff failed to state a claim for equitable relief). Therefore, Matrix's motion to dismiss for failure to state a claim should be **GRANTED**, and Plaintiffs' eighth claim for relief, Doc. 14 at 29, should be dismissed.

        iv.       Failure to State a Claim Under Common Law (Claims 15 and 18)

Matrix moves to dismiss Plaintiffs' common law claims because "Plaintiffs do not specify what state's common law principles should apply to these claims." Doc. 26 at 31. Matrix also avers that "Plaintiffs fail to state any type of negligence claim" because "they do not allege facts showing the existence of any duty owed by Matrix Trust to themselves." Doc. 26 at 31. Finally, Matrix contends that Plaintiffs' professional negligence allegations fails because there are no allegations as to what professional standards applied to Matrix. Doc. 26 at 32.

---

[3] Nor do Plaintiffs allege that Matrix, notwithstanding its lack of possession over the funds, receives proceeds of the funds upon which the Court could impose a constructive trust. *See, e.g.*, *ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518 (5th Cir. 2013) (en banc) (holding that "equitable relief demands the imposition of a constructive trust on the proceeds of [an annuity] as they accrued to [a] Special Needs Trust," even though the defendant did not have possession of the funds, where the plan had a lien on recovery from a settlement agreement, and funds from a settlement agreement were paid to a separate entity which was authorized to purchase an annuity and make payments to a special needs trust for the benefit of the defendant).

In opposition, Plaintiffs maintain that "the same general common law negligence factors will apply" regardless of which law the Court applies. Doc. 32 at 32. Moreover, Plaintiffs argue they have alleged that: (1) Matrix had custody of the Plans' assets, "thereby creating duty"; (2) Matrix "completed the fraudulent transfers with knowledge that the transfers were improper"; (3) the transfers "resulted in losses to the Plans." Doc. 32 at 32. Lastly, Plaintiffs allege that professionals are held to a higher standard of care, and "[a]s alleged in the Amended Complaint, this 'higher standard of reasonable care' was required here." Doc. 32 at 32.

Under Texas law, a claim for common law negligence requires proof of: (1) "a legal duty owed by one person to another," (2) "a breach of that duty," and (3) "damages proximately resulting from the breach." *Warner v. Wal-Mart Stores, Inc*., 91 F.3d 140, 140 (5th Cir. 1996) (per curium) (internal citation omitted). The elements are the same to establish liability for professional negligence. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 314 (5th Cir. 2002).

In its operative complaint, Plaintiffs state in conclusory fashion that "Matrix breached its duties held to Plaintiffs" but fail to adequately plead factual allegations demonstrating that such a duty arose. Doc. 14 at 49. Plaintiffs merely assert that the "Plans' assets were held in accounts at Matrix." Doc. 14 at 48. But, again, Plaintiffs sue individually, not on behalf of the Plans. While the fact that Matrix held the assets of the Plans may be a factor in establishing that Matrix held a duty to the Plan, it does not demonstrate that Matrix owed a duty to the individual Plaintiffs.

Indeed, if as Plaintiffs have pled, the duty purportedly owed them by Matrix arises under the Plan, then Plaintiffs' common law negligence claims are preempted by ERISA. ERISA's preemption provision is broad and "supersede[s] any and all State laws insofar as they may . . .

16

relate to any employee benefit plan." *Madera v. Corp. Solutions, Inc.*, No. 3:03-CV-2397, 2004 WL 2494958, at *2 (N.D. Tex. Nov. 4, 2004) (Lindsay, J.) (quoting 29 U.S.C. § 1144(a)).  A state law claim "relates to" a benefit plan "if it has a connection with or reference to such a plan." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985).  Here, since Plaintiffs only allege a duty arising under the Plan, their state law negligence claim is clearly preempted.  *See Rokohl v. Texaco, Inc.*, 77 F.3d 126, 129 (5th Cir. 1996).

Accordingly, Matrix's motion to dismiss claims fifteen and eighteen should be **GRANTED**.

## IV.    LEAVE TO AMEND

Plaintiffs request that they be permitted to replead if the Court grants Matrix's motion to dismiss.  Doc. 32 at 32.  The Court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).  However, in their response to the motion to dismiss, Plaintiffs have not suggested any basis for amendment to cure the infirmities identified herein.   Under these circumstances, granting leave to amend would appear futile and likely to cause unnecessary delay.  *See also U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (a "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)" (quoted case omitted)).

## V.    RECOMMENDATION

For these reasons, Matrix's *(1)Motion to Dismiss for Improper Venue, or Alternatively, to Transfer and (2) Motion to Dismiss for Failure to State a Claim*, Doc. 25, should be **GRANTED** to the extent stated herein, and all of Plaintiffs' claims against Matrix should be **DISMISSED**

17

**WITH PREJUDICE**.  As no further claims will remain against Matrix, it should be terminated as a defendant.

**SIGNED** on March 5, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).