UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MBA ENGINEERING INC., et al. | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:17-cv-3300-X |
| VANTAGE BENEFITS | § | |
| ADMINISTRATORS, INC., et al., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiffs MBA Engineering Inc. ("MBA") and Craig Meidinger's (collectively, "Plaintiffs") motion for default judgment against Defendants Jeffrey and Wendy Richie and request for damages, prejudgment interest, and attorney's fees and costs.  [Doc. 155].  For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** the motion.  The Court **GRANTS** default judgment and **GRANTS** the motion as to damages and prejudgment interest. The Court **DENIES WITHOUT PREJUDICE** Plaintiffs' request for attorney's fees and costs.

## I. Factual Background

This lawsuit stems from the theft of more than $2 million from MBA's employee retirement plans by Jeffrey and Wendy Richie.  The Richies were the principals of former defendant Vantage Benefits Administrators, Inc. ("Vantage"), which was the third-party administrator of the retirement plans for MBA.  In October 2017, the FBI raided Vantage's offices.  Thereafter, the Richies were indicted for

1

stealing from several of MBA's retirement plans. They later pleaded guilty and were sentenced in 2020.

In December 2017, Plaintiffs sued the Richies and Vantage.[1]  To date, neither the Richies nor Vantage have appeared in this case, and the clerk entered default against them in July 2018.[2]  The Court denied without prejudice the Plaintiffs' 2018 motion for default judgment against Vantage and the Richies because Vantage's bankruptcy filings led to a stay of the case.[3]  Now, the Plaintiffs have voluntarily dismissed all claims against Vantage[4] and move again for default judgment against the Richies.

## II. Legal Standards

Federal Rule of Civil Procedure 55(b)(2) provides that, in proceedings not involving a certain sum:

> the party must apply to the court for a default judgment. . . .  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

---

[1] Plaintiffs later added claims against Matrix Trust Company ("Matrix") in an amended complaint.  Doc. 14.  The Court granted summary judgment in favor of Matrix on all of these claims.  Doc. 150 at 21–22.  Matrix brought three counterclaims against Plaintiffs, which the parties voluntarily dismissed.  Doc. 178.

[2] Doc. 37.

[3] Doc. 49.

[4] Doc. 156.

A default requires a court to accept as true a plaintiff's well-pled allegations in a complaint, except regarding damages.[5]

In determining whether to enter a default judgment, courts conduct a two-part analysis. First, courts examine whether a default judgment is appropriate under the circumstances. Relevant factors (called the *Lindsey* factors) include: (1) whether disputes of material fact exist; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would be obliged to grant a motion from the defendant to set the default judgment aside.[6] Second, the Court assesses the merits of a plaintiff's claims and whether there is a sufficient basis in the pleadings for the judgment.[7]

## III. Analysis

The Court deems the facts on liability to be admitted. Plaintiffs served the Richies with their amended complaint, and the Richies have yet to respond. The application for a clerk's default was supported by an affidavit regarding service of process.[8] While Rule 55 allows for hearings when a party has not appeared, it does

---

[5] *See, e.g., Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015) (recognizing that a complaint is well pled when "all elements of [a] cause of action are present by implication"); *In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability."); *see also U.S. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages.").

[6] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[7] *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

[8] *See* Doc. Nos. 36-2 at 2–3; 36-4 at 2–3.

not command them.[9]  The Court will proceed without a hearing.

### A.  Procedural Appropriateness of Default Judgment

The Court now turns to the six *Lindsey* factors.  First, there are no material facts in dispute because the Richies have not filed any responsive pleading.  Second, regarding substantial prejudice, the Richies' failure to respond could bring adversarial proceedings to a halt and substantially prejudice Plaintiffs but not the Richies.  Third, the Richies' ongoing failure to respond or participate in this litigation clearly establishes grounds for the default.  Fourth, regarding mistake or neglect, the Court has no reason to believe the Richies are acting under a good faith mistake or excusable neglect.  Fifth, a default judgment would not be unduly harsh in these circumstances because the Richies were properly served, failed to appear, and are in default, which warrants a default judgment under Rule 55(b)(2).  The sixth issue is whether the Court would grant a motion to set aside the default, and the Court is unaware of any basis to do so.

### B.  Sufficiency of the Plaintiffs' Amended Complaint

Next, the Court must turn to the merits of Plaintiffs' claims.  Although the Richies, by virtue of their default, are deemed to have admitted Plaintiffs' well-pled allegations, the Court must nonetheless review the complaint to determine whether it established a viable claim for relief.[10]  Having considered Plaintiffs' amended complaint, the Court finds that these causes of action are sufficiently supported and

---

[9] FED. R. CIV. PROC. 55(b)(2) (stating that a court "may conduct hearings").

[10] *Nishimatsu*, 515 F.2d at 1206.

that Plaintiffs have thus established a viable claim for relief.

Because Plaintiffs have shown that default judgment is procedurally appropriate and their complaint adequately alleges their claims against the Richies, the Court **GRANTS** default judgment against the Richies.

### C. Damages

Plaintiffs request $2,269,653.43 in damages, prejudgment interest on this amount, and an additional $93,123.29 in attorney's fees.

"As a general proposition, in the context of a default judgment," courts need not conduct damages hearings "where the amount claimed is a liquidated sum or one capable of mathematical calculation."[11]  The Federal Rules of Civil Procedure "explicitly grant[] the district court wide latitude" in determining whether to conduct damages hearings following default judgments.[12]  Accordingly, the Court will proceed without a hearing.

First, Plaintiffs seek $2,269,653.43 as "the principal loss" that MBA's retirement plans sustained due to the Richies.[13]  Plaintiffs support this number with promissory notes proving up the transfers,[14] and the Court has already acknowledged the credibility of this amount in a previous order.[15]  In light of this uncontroverted and precise evidence, the Court agrees that Plaintiffs are entitled to $2,269,653.43 in

---

[11] *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

[12] *Id.*; *see* FED. R. CIV. PROC. 55(b) ("The court *may* conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages[.]" (emphasis added)).

[13] Doc. 155 at 4.

[14] Docs. 36-5–36-7; 133-1; 133-8.

[15] Doc. 150 at 8 (citing Doc. 132 at 31).

damages.

Second, Plaintiffs seek prejudgment interest in an amount "which the Court deems would fairly compensate Plaintiffs for their losses from the date of loss until the date of judgment."[16]  When the Court's jurisdiction is based on a federal question, the forum state's law regarding prejudgment interest applies.[17]   In Texas, prejudgment interest is calculated using the same rate as postjudgment interest,[18] which is "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation."[19]  As of the date of this judgment, that rate is 5.42%.[20]  Thus, prejudgment interest will accrue on the judgment at a rate of 5.42% beginning on the date this judgment is filed.

Finally, Plaintiffs request $93,123.29 in attorney's fees and costs spent "prosecut[ing] their claims against the Richies only."[21]  They support this figure with declarations from the Plaintiffs' original counsel[22] and Plaintiffs' current counsel,[23] but neither declaration provides a breakdown of the billed hours or any specific

---

[16] Doc. 155 at 4.

[17] *See Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 984 (5th Cir. 1991), *abrogated on other grounds by CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) ("When awarding prejudgment interest in an action brought under ERISA, it is appropriate for the district court to look to state law for guidance in determining the rate of interest.").

[18] *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 415 (5th Cir. 2011) (citing *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 532 (Tex. 1998)).

[19] *Id.* (quoting TEX. FIN. CODE. § 304.003(c)(1)–(2)).

[20] *Post Judgment Interest Rates*, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, https://www.txnd.uscourts.gov/post-judgment-rates (last visited July 14, 2023).

[21] Doc. 155 at 5 (emphasis removed).

[22] Doc. 19-1 at 3–4 (detailing $83,227.50 in attorney's fees and costs).

[23] Doc. 155-1 at 2–3 (detailing $5,554.00 in attorney's fees and costs).

evidence to prove up the amounts.  Instead, each declaration simply states the total number of hours billed and the applicable hourly rates.  The Court cannot grant the fees and costs Plaintiffs seek without specific evidence showing where the amounts came from.

The Court **GRANTS** Plaintiffs' request for damages and prejudgment interest and **DENIES WITHOUT PREJUDICE** Plaintiffs' request for attorney's fees.  The Court **ORDERS** Plaintiffs to file a new motion and affidavit within fourteen days of this Order to competently prove their requested attorney's fees.[24]

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for default judgment against the Richies.  The Court **ORDERS** the Richies to pay Plaintiffs $2,269,653.43 in damages plus prejudgment interest at a rate of 5.42% accruing from the date of this judgment.  The Court will determine the proper attorney's fees award when, within fourteen days of this Order, Plaintiffs submit a new motion and affidavit proving their fees and costs in compliance with Federal Rule of Civil Procedure 54.

**IT IS SO ORDERED** this 14th day of July, 2023.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[24] *See* FED. R. CIV. PROC. 54(d)(2)(A).

7